# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Statesboro Division

In the matter of:      )

     )     Adversary Proceeding

JACK M. MARTIN      )

(Chapter 13 Case Number <u>06-60637</u>)      )     Number <u>07-6004</u>

     )

*Debtor*      )

     )

     )

JACK M. MARTIN      )

     )     **FILED**

*Plaintiff*      )     Samuel L. Kay, Clerk

     )     United States Bankruptcy Court

     )     Savannah, Georgia

v.      )     By cryan at 5:14 pm, Nov 06, 2007

     )

CITIFINANCIAL, INC.      )

     )

*Defendant*      )

## MEMORANDUM AND ORDER
## ON MOTION TO COMPEL ARBITRATION AND
## DISMISS OR STAY PROCEEDINGS

Debtor's Chapter 13 was filed on December 27, 2006. Debtor filed this

Adversary Proceeding against creditor CitiFinancial Services, Inc. ("CitiFinancial") on April

2, 2007. In response to the Adversary Proceeding, CitiFinancial filed a Motion to Compel

Arbitration of Debtor's claims and to dismiss or stay proceedings pending the arbitration.

After a hearing and consideration of briefs and applicable law, I conclude that CitiFinancial's

motion to compel arbitration of some of the claims will be granted: intentionally

◥AO 72A
(Rev. 8/82)

misrepresenting to Debtor that it had a security interest; forcing Debtor into bankruptcy; defamation; and infliction of emotional distress. The motion to compel arbitration of Debtor's two causes of action concerning the validity of CitiFinancial's lien will be denied. I also conclude that CitiFinancial's motion to stay this adversary proceeding pending the completion of the arbitration process will be granted as to Debtor's arbitrable claims and denied as to Debtor's two non-arbitrable causes of action concerning the validity of CitiFinancial's lien.

## FINDINGS OF FACT

Debtor obtained a loan from Associates Financial Services of America, Inc., n/k/a Associates First Capital Corporation ("Associates") by virtue of a Loan Agreement dated December 21, 1995. Complaint, Dckt.No. 1, Ex. C. (April 2, 2007). In connection with this loan, Debtor signed an arbitration agreement agreeing that any and all claims and disputes that related in any way to the Loan Agreement would be resolved in arbitration. Affidavit of Teresa M. Baer, Dckt.No.13, p.7-8 (June 29, 2007).

This loan was transferred several times before it reached CitiFinancial. The loan was transferred from Associates to Associates Financial Services Company, Inc. ("AFSCI") on October 1, 2001. On this same day, AFSCI transferred the loan to AFSC, LLC, a Delaware limited liability company ("AFSC, LLC"). On October 2, 2001, AFSC, LLC transferred the loan to CitiFinancial Credit Corporation ("CCC"). On that same day, CCC transferred the loan to CitiFinancial Services Inc. 311 LLC ("311 LLC"). As a result

of a merger effective September 1, 2003, the loan was finally transferred from 311 LLC to CitiFinanical. Affidavit of Teresa M. Baer, Dckt.No.13, p. 2.

A Deed to Secure Debt was filed ("DSD 1"), pledging Debtor's residence and three tracts of land to secure the loan. Complaint, Dckt.No. 1, Ex. D (April 2, 2007). The loan was refinanced on May 9, 1996 and March 14, 1997. Complaint, Dckt.No.1, ¶ 9 and ¶10 (April 2, 2007). CitiFinancial filed another Deed to Secure Debt on March 19, 1997 ("DSD 2"). Id., Ex. E  (April 2, 2007). After the debt was refinanced again on March 24, 1999, another Deed to Secure Debt was filed on April 7, 1999 ("DSD 3"). Id., Ex. H (April 2, 2007). DSD 3 contains a signature of the notary as an official witness but contains no official notary seal.  Additionally, DSD 3 has a separately attached legal description, but the body of DSD 3 does not reference the attached legal description nor is the legal description separately signed. Id.

On December 27, 2006, Debtor filed Chapter 13 because CitiFinancial was threatening to foreclose on his residence. Case No. 06-60637; Complaint, Dckt.No. 1, ¶ 17 (April 2, 2007). CitiFinanical was listed as a creditor and filed a secured claim in the amount of $89,714.57. Case No. 06-60637, Claim No. 3. There are only two claims in this bankruptcy: the secured claim of CitiFinancial and an unsecured claim by Portfolio Recovery Associates, LLC for $1983.33. Case No. 06-60637, Claim No. 1. Thus the dispute over the CitiFinancial claim amounts to over 95% of all claims in this case.

Debtor's complaint asserts four causes of action. First, Debtor argues that CitiFinancial's claim is unsecured because DSD 3 contains no notary seal, the legal description attached to DSD 3 is not referenced in the deed itself, and the description is not separately signed. Second, because of those defects, Debtor claims Citifinancial intentionally, knowingly and fraudulently misrepresented to Debtor that it held a security interest. Debtor argues that as a result of this fraudulent misrepresentation, CitiFinancial caused him damages by forcing him to file bankruptcy. Third, Debtor claims that CitiFinancial is liable for knowingly publishing false facts and causing embarrassment and emotional distress by publishing in a newspaper a foreclosure asserting a security interest in Debtor's property. Fourth, Debtor asks that CitiFinancial be held accountable for filing a fraudulent proof of claim and subjected to damages and fines pursuant to 18 U.S.C. §§ 152 and 3571.

In response CitiFinancial "moves for this Court to (I) compel [Debtor] to resolve any and all claims against CitiFinancial, as well as CitiFinancial's claims against [Debtor], in binding arbitration in accordance with the arbitration agreement and (ii) either dismiss this unnecessary action, or at least stay all proceedings pending completion of arbitration." Motion to Compel Arbitration and Dismiss or Stay Proceedings, Dckt.No.11, p. 2 (June 29, 2007).

For the reasons that follow, I conclude that there is no private civil right of action arising under 18 U.S.C. § 152, thus this Court lacks jurisdiction to preside over that specific cause of action. Second, CitiFinancial did not waive its right to arbitration by filing

a proof of claim in the underlying bankruptcy case. Third, one cause of action is a Code-based, creditor claim: Debtor's cause of action to declare Citifinancial's lien unsecured because of the lack of notary seal. Thus, I hold that this cause of action is non-arbitrable and should be decided by this Court. Fourth, I find the remainder of Debtor's causes of actions are debtor-derived and their arbitrability must be analyzed under the McMahon test.

## CONCLUSIONS OF LAW

Debtor asks CitiFinancial be held accountable for filing a fraudulent proof of claim and be subjected to damages and fines pursuant to 18 U.S.C. §§ 152 and 3571. I conclude that there is no private civil right of action arising under § 152, and this Court lacks jurisdiction to preside over this cause of action.

Section 152(4) states that "a person who . . . knowingly and fraudulently presents any false claim for proof against the estate of a debtor, or uses any such claim in any case under title 11, in a personal capacity or as or through an agent, proxy, or attorney; . . . shall be fined under this title, imprisoned not more than 5 years, or both." This is a criminal statute. It does not explicitly provide for a private right of suit for civil damages or injunctive relief. Furthermore, there are no cases suggesting that a private right to sue should be implied under this section. Clayton v. Raleigh Federal Sav. Bank., 194 B.R. 793, 795 (M.D.N.C. 1996); *see also* In re Terio, 158 B.R. 907, 911-12 (S.D.N.Y. 1993), *aff'd* 23 F.3d 397 (2d Cir. 1994)(district court rejected the contention that a private cause of action could arise under 18 U.S.C. § 152). To hold otherwise would be inconsistent with the "overall legislative

scheme with respect to bankruptcy proceedings." <u>Heavrin v.Boeing Capital Corp.</u>, 246

F.Supp.2d 728, 731 (W.D.Ky. 2003). As the district court in <u>Heavrin</u> stated:

> [T]he Bankruptcy Code is a highly intricate and reticulated
> statutory scheme that does not easily lend itself to the
> creation of new rights and remedies on the part of private
> parties. The Code creates extensive rights readily available
> to litigants, and there is no reason to believe that additional
> rights should be created where none are expressed or
> clearly implied.
>
> <u>Id.</u>

Therefore, I conclude that this Court does not have the jurisdiction to preside over this cause

of action and hold that Count F will be dismissed.

Debtor also claims that CitiFinancial has waived its right to arbitration by

filing a proof of claim in the underlying bankruptcy case. I conclude that CitiFinancial has

not waived its right to arbitration for the following reasons.

The Eleventh Circuit has held "that, despite the strong policy in favor of

arbitration, a party may, by its conduct, waive its right to arbitration." <u>S & H Contractors,</u>

<u>Inc. v. A.J. Taft Coal Co.</u>, 906 F.2d 1507, 1514 (11th Cir. 1990)(citations omitted). In

determining whether a party has waived its right to arbitrate, the Eleventh Circuit established

a two-part test. "First, we decide if, 'under the totality of circumstances,' the party 'has acted

inconsistently with the arbitration right,' and, second, we look to see whether, by doing so,

that party 'has in some way prejudiced the other party.'" <u>Ivax Cor. v. B. Braun of America, Inc.</u>, 286 F.3d 1309, 1315-16 (11th Cir. 2002) (*quoting* <u>S & H Contractors, Inc.</u>, 906 F.2d at 1514). "When determining whether the other party has been prejudiced, [this Court] may consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process." <u>S & H Contractors, Inc.</u>, 906 F.2d at 1514.

In this case, the Complaint was filed on April, 2 2007. <u>Complaint</u>, Dckt. No. 1. On May 30, 2007, Debtor asked this Court to reissue a new Summons and Notice of Conference to CitiFinancial after the first summons was not shown to have been accepted. <u>Request to Reissue Summons</u>, Dckt. No. 5. On that same day, this court reissued the Summons advising CitiFinancial that it had 30 days to file its Answer. <u>Reissued Summons and Notice Requiring Rule 26(f) Report</u>, Dckt. No. 6. On June 29, 2007, CitiFinancial filed its Answer and the Motion to Compel Arbitration and Dismiss or Stay Proceedings. <u>Answer to Complaint and Counterclaim</u>, Dckt. No. 10 and <u>Motion to Compel Arbitration and Dismiss or Stay Proceedings</u>, Dckt. No. 11.

In between the filing of the Complaint and the filing of this Motion, CitiFinancial did nothing that indicated it "has acted inconsistently with the arbitration right." It did not file any motions, take any depositions, or in any other way participate substantially in this litigation prior to demanding arbitration. *See* <u>Morewitz v. West of Engl.Ship Owners Mut. Prot. & Indem. Ass'n</u>, 62 F.3d 1356, 1366 (11th Cir. 1995)("[w]aiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with

an intent to arbitrate."); *see also* <u>S & H Contractors, Inc.</u>, 906 F.2d at 1514; <u>E.C. Ernst, Inc.</u> <u>v. Manhattan Constr. Co.</u>, 551 F.2d 1026, 1040-41 (5th Cir. 1977).

Nor did CitiFinancial's filing a proof of claim in the main bankruptcy case waive its right to arbitrate. As stated above, CitiFinancial had to have "acted inconsistently with the arbitration right" in order to waive its right to arbitrate. In the underlying bankruptcy case, CitiFinancial filed a proof of claim as a secured party on February 1, 2007. *See* Case No. 06-60637, Claim No. 3. At that moment, there was no need to seek arbitration as there was no dispute over the status of the claim. In fact, the need to seek arbitration only arose when Debtor filed the Complaint in this Adversary Proceeding, and as discussed above, CitiFinancial did not act inconsistently with the arbitration right in between the filing of the Complaint and the filing of the Motion to Compel Arbitration.

Turning now to the heart of this case, the motion to compel arbitration, it is axiomatic that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When faced with a request for arbitration, federal courts are to "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

In looking at the enforcement of arbitration agreements between private

parties, the Supreme Court held:

> The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent will be deducible from the statute's text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes.
>
> Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226-27, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (citations and quotations omitted).

Under the McMahon test, the party seeking to avoid enforcement of an otherwise applicable arbitration provision must demonstrate that there is an "irreconcilable conflict" between the Federal Arbitration Act and the underlying purpose of the other federal statute in question. Id. at 239. The Federal Arbitration Act is evidence of a strong federal policy favoring the enforcement of arbitration agreements. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Therefore, the party opposing arbitration bears the burden of demonstrating that Congress did not intend to waive judicial remedies for the particular rights at issue. McMahon, 482 U.S. at 227.

## 1. Does the Arbitration clause apply to the dispute?

The first step in determining whether a pre-petition arbitration clause is enforceable in bankruptcy is analyzing whether the arbitration agreement is "otherwise applicable" to the dispute; in other words, I must ascertain whether Debtor in his capacity as a Chapter 13 debtor is a party to the arbitration agreement. *See* Hays & Co. v. Merrill Lynch, Pierce, Fenner, & Smith, Inc., 885 F.2d 1149, 1155 (3d Cir. 1989).

The court in Hays stated that "the trustee-plaintiff stands in the shoes of the debtor for the purposes of the arbitration clause and that the trustee-plaintiff is bound by the clause to the same extent as would the debtor." Hays, 885 F.2d at 1153. "As a result, the trustee was bound to arbitrate most of the claims because they were derivative of one who was a party to the arbitration agreement, the debtor." In re Friedman's, 372 B.R. 530, 538 (Bankr. S.D.Ga. 2007). However, the Third Circuit held "the trustee's two causes of action under 11 U.S.C. § 544(b) were 'creditor claims that the Code authorizes the trustee to assert on their behalf.'" Hays, 885 F.2d at 1155. "As to these Code-created *creditor* claims, Hays concluded that the trustee was not standing in the shoes of the debtor so as to be bound by the arbitration agreement." "Since the trustee, in asserting creditor claims, was not a successor-party, those claims were not arbitrable." In re Friedman's, 372 B.R. at 538-39.

The same analysis regarding debtor-derived and creditor-derived claims applies here because Debtor upon filing a Chapter 13 petition steps "'into the role of the trustee'" and exercises "'concurrent authority to sue and be sued on behalf of the estate.'"

AO 72A
(Rev. 8/82)

Haug v. HomeQ Servicing Corp., slip op., 2007 WL 486699, *3 (M.D.Ga. 2007)(*quoting*

Cable v. Ivy Tech State Coll., 200 F.3d 467, 473 (7th Cir. 1999)); *see* In re Stewart, 373 B.R.

801, 805 (Bankr.S.D.Ga. 2007)(holding that a Chapter 13 debtor has "concurrent standing

with the Chapter 13 Trustee to participate in any settlement discussions as well as standing

to challenge the existence of any-purported settlement." " . . . In this context, "trustee" or

"debtor in possession" includes a Chapter 13 debtor."); *see also* 11 U.S.C. § 303. Thus it is

the nature of the claim which governs whether the debtor is deemed to be a party to and

bound by the arbitration clause.


### 2. The Debtor's Code-Created, Creditor Claims

I now turn to whether the complaint asserts Code based creditor claims. I

conclude that one cause of action is Code-based: Debtor's cause of action to declare

Citifinancial's lien unsecured because of the lack of notary seal.


Under Georgia law, a deed to secure debt must be attested in the same

manner as a mortgage in order for the deed to secure debt to be eligible for recordation.

O.C.G.A. § 44-14-61. Thus, to be recorded, a deed to secure debt must be attested by one

official witness, typically a notary, and one unofficial witness. Id. § 44-14-33. A recordation

on an insufficient attestation is equivalent to no recordation at all and the recording of an

improperly attested deed is a mere nullity. Stone v. Decatur Fed. Sav. and Loan Ass'n (In re

Fleeman), 81 B.R. 160, 162 (Bankr.M.D.Ga 1987)(*citing* In re Hammett, 286 F. 392

(N.D.Ga. 1923); <u>Propes v. Todd</u>, 79 S.E.2d 346 (Ga.Ct.App. 1953)). Thus, recordation of an improperly attested deed to secure debt does not provide constructive notice of the contents or existence of the deed. <u>Id.</u> (*citing* <u>American Distributing Co. v. Reid</u>, 114 S.E.2d 299 (Ga.Ct.App. 1960)). Despite the nullity of the recordation, however, a deed to secure debt is still valid and not void between the partes even if it is improperly attested. <u>Id.</u> (*citing* <u>Central Bank & Trust Co. v. Creede</u>, 118 S.E.2d 844 (1961)); *see* <u>Hooten v. Goldome Credit Corp.</u>, 481 S.E.2d 550 (Ga.Ct.App. 1997).

Because an improperly attested deed to secure debt is valid between the parties, a debtor suing under state law to void the lien would likely fail. However, upon filing bankruptcy, additional rights accrue. Under 11 U.S.C. § 544(a)(3), a trustee (here the debtor) may avoid any transfer that could be avoided by a bona fide purchaser. Since a recorded instrument that has not properly been attested does not provide constructive notice to a future purchaser, a Chapter 13 debtor, asserting §544 powers, can arguably avoid the lien for the benefit of the estate. *See* <u>Stone</u>, 81 B.R. at 163. This claim did not exist pre-petition and derives exclusively from the Bankruptcy Code. It therefore qualifies as a creditor-derived claim. Because Debtor asserting this claim for the estate is not a "party" to the arbitration agreement, the § 544 avoidance claim is not arbitrable.

### 3. Debtor's debtor-derived claims

A Chapter 13 debtor "stands in the shoes" of the pre-petition debtor under

§ 541 and can assert causes of action possessed by the debtor, but "subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor [pre-petition]." <u>Hays</u>, 885 F.2d at 1154. "One such defense is a contractual arbitration provision." <u>Id.</u> The remainder of Debtor's causes of actions are debtor-derived and potentially subject to arbitration.

First, Debtor asks this Court to declare CitiFinancial's lien void because the legal description attached to DSD 3 was neither signed nor referenced in the deed itself. *See* <u>Complaint</u>, Dckt.No. 1, ¶ 14 (April 2, 2007). Debtor did not explain the theory supporting this claim. Nevertheless, I hold that this claim is debtor-derived for the following reason.

The most plausible theory underlying this claim is the Statute of Frauds. To make a deed to secure debt binding on Debtor, "the promise must be in writing and signed by the party to be charged . . . (4) Any contract for sale of lands, or any interest in, or concerning lands . . . " O.C.G.A. § 13-5-50. If this legal description was neither signed nor referenced in DSD 3, Debtor might argue that the Statute of Frauds renders it void. However, this claim could have been brought by Debtor pre-petition, is based solely on state law, and as such, is subject to all defenses that could be asserted against the Debtor including the arbitration clause.

Debtor asserts additional state law claims: (1) Citifinancial intentionally,

knowingly and fraudulently misrepresented to the Debtor that it held a security interest; (2) as a result of this fraudulent misrepresentation, CitiFinancial caused him damages in the form of forcing him to file bankruptcy; and (3) CitiFinancial is liable for knowingly publishing false facts and causing embarrassment and emotional distress by publishing a foreclosure ad in a newspaper asserting a security interest in Debtor's property. *See* Dckt.No. 1. These causes of action could have likewise been brought pre-petition, are based solely on state law, and are subject to the arbitration clause.

### 4. Whether arbitration of the debtor-derived claims can be denied under the McMahon test.

A court has discretion in a bankruptcy case to deny the enforcement of an otherwise applicable arbitration provision under some circumstances. In Whiting-Turner Contracting Co. v. Elec. Mach. Enterprises, Inc.(In re Elec. Mach. Enterprises, Inc.), the Eleventh Circuit established a test for determining the enforceability of an arbitration agreement. If the court determines that the agreement is "otherwise applicable," the bankruptcy court must distinguish the claims between core and non-core proceedings. 479 F.3d 791, 796 (11th Cir. 2007)(*citing* Hays, 885 F.2d 1149). "In general, bankruptcy courts do not have the discretion to decline to enforce an arbitration agreement relating to a non-core proceeding . . . [and] even if a proceeding is determined to be a core proceeding, the bankruptcy court must still analyze whether enforcing a valid arbitration agreement would inherently conflict with the underlying purposes of the Bankruptcy Code." Id.

The Bankruptcy Code provides a non-exclusive list of core proceedings. *See* 28 U.S.C. § 157(b)(2)(A)-(P). The Eleventh Circuit follows a two-step process to determine whether a claim is core. First, the court must determine whether the claim is listed in the statute as a core claim. If so, then the court must examine the proceeding in light of constitutional limitations. If not listed, since the list is non-exclusive, the court must determine whether the claim is "in the nature of a core claim" utilizing the test set forth in Toledo. *See* Whiting-Turner, 479 F.3d at 797(*citing* Cont'l Nat'l Bank v. Sanchez (In re Toledo), 170 F.3d 1340, 1348 (11th Cir. 1999)).

## (A)  THE STATUTE OF FRAUDS CAUSE OF ACTION IS A CORE PROCEEDING

Section 157(b)(2)(K) states "[c]ore proceedings include, but are not limited to . . . determinations of the validity, extent, or priority of liens." This claim falls directly within § 157(b)(2)(K) since Debtor is asking this court to determine the extent or validity of CitiFinancial's lien, apparently due to a violation of the Statute a Frauds. Even though a matter is listed among the non-exclusive list of "core proceedings," a court must also construe the proceeding "in light of the constitutional limitations that prompted their enactment." In re Toledo, 170 F.3d at 1348. CitiFinancial thus argues that Debtor's cause of action concerning the validity of CitiFinancial's lien due to the Statute of Frauds is non-core because "'[i]f the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding.'" Reply Memorandum in Support of Motion to Compel Arbitration and Dismiss or Stay

Proceedings, Dckt. No. 25, p. 4 (August 29, 2007).  I reject this argument for the following four reasons.

First, the Eleventh Circuit stated that "the dependence of the merits of an action on state law . . . does not, in and of itself, mean that the action is non-core." In re Toledo, 170 F.3d at 1349. The Eleventh Circuit ultimately concluded in Toledo that the proceeding was non-core for two reasons:  the proceeding involved non-estate property and the proceeding arose under state law and not under bankruptcy law. Id. ("action to determine the validity, priority, and extent of liens on *the Partnership Property* did not invoke a substantive right created by bankruptcy law, and could clearly occur outside of bankruptcy."(emphasis added)). In contrast, Debtor's cause of action in this case involves determining the validity of a lien on estate property owned by Debtor. Thus, Toledo is distinguishable. *See* Gravel and Shea v. Vermont Nat. Bank, 162 B.R. 961, 967-69 (D.Vt. 1993)(holding that a state-law dispute over the validity and priority of a lien between two creditors was a core-proceeding under 28 U.S.C. §157(b)(2)(K) because it involved property of the estate.) *See also* Carr v. Sherman (In re Hollingsworth), 198 B.R. 832, 833 (Bankr.M.D.Fla. 1996).

Second, 28 U.S.C. §157(b)(3) states that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." *See* In re Mankin, 823 F.2d 1296, 1299-1301 (9th Cir.

1987)(holding that a state fraudulent conveyance action is core because 28 U.S.C.§157(b)(2)(H) does not limit core proceedings to only federal actions; the state actions and federal actions are practically identical; §157(b)(3) states an action can not be deemed non-core simply because it arises under state law; and the legislative history suggests that state fraudulent conveyance actions are core.); *see also* Wedtech Corp. V. London, M.D. (In re Wedtech Corp.), 81 B.R. 237, 238-39 (S.D.N.Y. 1987); Addison v. O'Leary, 68 B.R. 487, 489-91 (E.D.Va. 1986); Moratzka v. Wencl (In re Wencl), 71 B.R. 879, 881-82 (Bankr.D.Minn. 1987).

Third, the Bankruptcy Code explicitly gives the bankruptcy judge the power to determine the validity and the amount of a lien regardless of whether the objection to the lien is based on state law or federal law. 11 U.S.C. § 502(b) states "if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . and shall allow such claim in such amount, except to the extent that - (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . . " Id. (emphasis added). Since the bankruptcy court is expressly granted the power to determine the enforceability of a claim against property of the debtor under state law, the § 157(b)(2)(K) categorization of such actions as core is consistent with the entire scope of the fundamental bankruptcy power to allow, disallow, and classify claims.

Fourth, language in Marathon supports this result: "[e]very [creditor] claim

must be filed and its validity is subject to adjudication by the bankruptcy court. The existence and validity of such claims recurringly depend on state law." Northern Pipeline Construction Co. V. Marathon Pipe Line Co., 458 U.S. 50, 97, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)(White, J., dissenting). Almost every creditor claim that comes in front of this Court is not confined to its "'technical common law meaning'" of the word "'debt as used by the Act,'" but "'extends to liabilities arising out of breach of contract . . . to torts . . . and to taxes owing to the United Sates or state or local governments.'" Id. at 96(White, J., dissenting). To hold that this court can not determine the validity, extent, or priority of any lien on estate property solely because the issue arose under state law would severely handcuff this Court from overseeing "the restructuring of debtor-creditor relations," which is "the core of the federal bankruptcy power."*See* Id. at 71(Brennan, J., plurality); Southeastern Sprinkler Co. V. Meyertech Corp. (In re Meyertech Corp.), 831 F.2d 410, 417 (3d Cir. 1987).

Therefore, I conclude that determining the validity of CitiFinancial's lien over estate property is a core proceeding under §157(b)(2)(K) and this conclusion is not violative of any constitutional concerns.

### (B)  DEBTOR'S REMAINING CLAIMS ARE NON-CORE

Debtor's remaining claims: intentionally misrepresenting to Debtor that it had a security interest; forcing Debtor into bankruptcy; defamation; and infliction of emotional distress, are non-core proceedings; therefore, I do not have the discretion to deny

arbitration as to these claims.

These remaining claims do not fall within any of the listed proceedings under 28 U.S.C. § 157(b)(2). However, since the list is non-exclusive, I must analyze the claims under the Toledo test to determine whether they are in the nature of the listed core proceedings.

> If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.
>
> In re Toledo, 170 F.3d at 1348 (*quoting* Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987)(emphasis in the original)).

The Eleventh Circuit concluded that because the claim asserted was not listed in §157, it was not a core proceeding because it did not satisfy a two-part test: it was not a substantive right created by bankruptcy law and the proceeding could clearly proceed outside of bankruptcy. Id. Similarly, Debtor's common law claims are not defined as core, do not invoke a substantive right created by bankruptcy law, and the proceeding to enforce them could clearly

occur outside of bankruptcy. As a result, they are non-core proceedings. Therefore, I do not have the discretion to decline to enforce the arbitration agreement as to these claims. *See* Whiting-Turner, 479 F.3d at 796.

## (C) APPLYING THE McMAHON TEST TO THE CORE CLAIMS

The Arbitration Act mandates enforcement of an agreement to arbitrate statutory claims. McMahon, 482 U.S. at 226. "Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command." Id. Therefore, "[t]he burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." Id. at 227. For Debtor to show this congressional intent "to limit or prohibit waiver of a judicial form for a particular claim," he must show an intent "'deducible from [the statute's] text or legislative history' or from an inherent conflict between arbitration and the statute's underlying purposes." Id.

The Eleventh Circuit has concluded that there is no evidence in the text or legislative history of the Bankruptcy Code indicating Congress's intent to except the Code from the Federal Arbitration Act. In re Friedman's, 372 B.R. at 542 n.4 (*citing* Whiting Turner, 479 F.3d at 796.). "Therefore, the only factor of the McMahon test to be applied in connection with bankruptcy is whether there is an inherent conflict." Id.

Debtor makes two arguments regarding the <u>McMahon</u> inherent conflict test: (1) "to compel arbitration would jeopardize the objectives of the bankruptcy court; which . . . include the 'goal of centralized resolution of purely reorganizing debtors and piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders"; and (2) "where the subject of both the arbitration and the bankruptcy adversary proceeding is a core proceeding, and where enforcement of the arbitration agreement would frustrate the efficient procession of the bankruptcy case . . . "*See* <u>Memorandum in Defense of Motion to Compel Arbitration and Dismiss or Stay Proceedings</u>, Dckt. No. 26, p. 7-9 (*citing* <u>In re White Mountain Mining Corp.</u>, 403 F.3d 164, 169 (4th Cir. 2005)).

In assessing whether there is an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code, it is easier to identify the factors which have been held insufficient than to articulate the correct standard. The following factors are now recognized as insufficient to find an inherent conflict:

> (1) Core proceedings do not *per se* create such a conflict. *See* <u>Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re National Gypsum)</u>, 118 F.3d 1056, 1067 (5th Cir. 1997)("Certainly not all core bankruptcy proceedings are premised on provisions of the Code that 'inherently conflict' with the Federal Arbitration Act; nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code."); *see also* <u>Mintze v. Am. Gen. Fin. Serv., Inc. (In re Mintze)</u>, 434 F.3d 222, 231 (3d Cir. 2006); <u>In re U.S. Lines</u>, 197 F.3d 631, 640 (2d Cir. 1999).

(2) The Bankruptcy Code purpose of centralized, efficient resolution of disputes in a specialized forum does not suffice. *See* <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (determining that in cases involving both arbitrable and nonarbitrable claims, a court is to enforce an agreement between the parties and "not substitute its own views of economy and efficiency for those of Congress." Rather, the arbitrable claims are to be sent to arbitration, "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."); *see also* <u>In re Friedman's</u>, 372 B.R. at 542-43 ("[T]he fact that arbitration may not be as 'efficient' or as 'expeditious' has been held not to *per se* justify refusal to enforce an arbitration clause even in the bankruptcy context.").

(3) Merely having an effect on the amount which will be distributed to creditors does not suffice. *See* <u>In re Mintze</u>, 434 F.3d at 232.

Rather, the facts that have supported a finding of interest conflict involved core matters where arbitration would potentially:

(1) Violate a fundamental purpose of the Bankruptcy Code. *See* <u>In re U.S. Lines</u>, 197 F.3d at 638 (only the Bankruptcy Court would insure that equitable distribution to creditors according to their Code-created priorities would occur.).

(2) Leave the Bankruptcy case "dead in the water," because the outcome of the potentially arbitrable issue was the threshold question upon which all subsequent proceedings in the bankruptcy court depended. *See* <u>In re White-Mountain</u>, 403 F.3d at 170; *see also* <u>In re Gandy</u>, 299 F.3d 489, 498-99 (5th Cir.2002).

(3) Interfere with the fundamental power/right of the bankruptcy court to enforce or interpret its own orders,

provisions of a plan, or the scope of the bankruptcy discharge.[1] *See* <u>In re National Gypsum</u>, 118 F.3d at 1065; or

(4)  Fail to provide full relief due to the inability to bring all parties before the panel. *See* <u>In re White Mountain</u>, 403 F.3d at 170.

I therefore hold that to deny a motion to compel arbitration, the Bankruptcy Court must find that:

Either the arbitration clause is not applicable because the issue involves a non-debtor-derivative, Code-based creditor claim, asserted by a trustee or debtor-in-possession such that the plaintiff is not a "party" to the arbitration agreement; or

(1)  The arbitration clause is "otherwise applicable" because it covers a debtor-derived claim;

(2)  The claim is a core proceeding; and

(3)  An inherent conflict exists in which compelling arbitration substantially interferes with the underlying purposes of the Code in a fundamental way similar to the four fact patterns set forth above.

This holding is consistent with the Second Circuit's fact-specific, totality of circumstances approach. *Compare* <u>MBNA Am. Bank N.A. v. Hill</u>, 436 F.3d 104, 108 (2d Cir. 2006) *with* <u>In re U.S. Lines</u>, 197 F.3d at 640-41. In <u>Hill</u>, the Second Circuit stated that

---

[1]Even here, the bankruptcy court does not trump arbitration in all cases. *See* <u>Hill</u> (interpretation of scope of automatic stay in a case where the case was nearly concluded held not to require the expertise of the bankruptcy Court to the exclusion of arbitration.

"even as to core proceedings, the bankruptcy court will not have discretion to override an

arbitration agreement unless it finds [1] that the proceedings are based on provision of the

Bankruptcy code that 'inherently conflict' with the Arbitration Act or [2] that arbitration of

the claim would 'necessarily jeopardize' the objectives of the Bankruptcy Code." Hill, 436

F.3d at 108. "This determination requires a particularized inquiry into the nature of the claim

and the facts of the bankruptcy." Id.

In this case, arbitration would inherently conflict with the Code because

Debtor's plan is entirely contingent on determining whether CitiFinancial's claim is secured

or unsecured. Permitting arbitration as to this claim would drastically affect Debtor's ability

to successfully emerge from Chapter 13 since determining the effect of CitiFinancial's lien

is critical to the Debtor's ability to formulate a payment plan. The case is "dead in the water"

until this threshold issue is resolved. It is impossible to accord Debtor a breathing spell and

at the same time provide adequate protection to the unsecured creditor who is stayed from

collecting its debt without determining whether this large $89,714.57 claim, which amounts

to approximately 98% of all claims in the case, will be classified secured and thus paid in full

or unsecured and paid pro-rata. In this context, the bankruptcy court must exercise

jurisdiction to determine the validity of the lien in an expeditious fashion and can do so only

if the lien validity issue under state law theories is consolidated with the unquestionably non-

arbitrable lien validity issue asserted as a Code-based creditor claim.

Therefore, I hold that compelling arbitration of this core claim inherently conflicts with the underlying purpose of the Bankruptcy Code. As a result, the Motion to Compel Arbitration of this claim will be denied.

### 5. The scope of the arbitration agreement as to the debtor-derived claims

Debtor makes additional arguments that none of the claims are within the scope of the arbitration agreement and that CitiFinancial is not a party with standing to enforce the arbitration agreement. I find that these non-Code-based arguments over the scope of the arbitration clause must be submitted to the arbitrator. In Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship, the Eleventh Circuit held that questions concerning the enforceability of an arbitration provision are for the arbitrators to decide where the parties have "clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid." 432 F.3d 1327, 1332 (11th Cir. 2005). "Although the default rule is for a court to determine the validity of the arbitration clause itself, parties may agree to preempt that rule by reserving the resolution of such issues for the arbitrators." In re Friedman's, 372 B.R. at 540.

In the present case, the parties agreed to contract around the default rule. In the arbitration agreement, CitiFinancial's predecessor and Debtor clearly agreed that "all claims and disputes" and any issue concerning "the validity of this arbitration agreement" is subject to arbitration. Affidavit of Teresa M. Baer, Dckt.No. 13, p.7-8 (June 29, 2007). Since the Chapter 13 debtor is a successor-party to the arbitration clauses with respect to the

debtor-derived, non-core causes of action, any argument that he wants to raise as to the scope or enforceability of the arbitration clauses with respect to those causes of action must be submitted to the arbitrators. *See* In re Friedman's, 372 B.R. at 540.

### 6. CitiFinancial's Stay Request

The last matter to address is CitiFinancial's request for a stay of this adversary proceeding pending the completion of the arbitration process. Under the Federal Arbitration Act, a court shall stay an action "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration" under a valid arbitration clause. 9 U.S.C. § 3. As to Debtor's claims against CitiFinancial that are arbitrable, a stay is mandatory. *See* Klay v. All Defendants, 889 F.3d 1191, 1204 (11th Cir. 2004). Therefore, CitiFinancial's motion to stay Debtor's debtor-derived, non-core causes of action pending the completion of the arbitration process will be granted.

As for Debtor's two nonarbitrable claims, however, a stay is not mandatory but rather a matter of discretion. *See* Id.("When confronted with litigants advancing both arbitrable and nonarbitrable claims, however, courts have discretion to stay nonarbitrable claims."). Where it is feasible to proceed with the litigation of nonarbitrable claims, courts will generally not enter a stay. Int'l Fidelity Ins. Co. v. BMC Contractors, Inc., slip op., 2007 WL 128813, *3 (M.D. Ga. 2007)(*citing* Klay, 389 F.3d at 1204). A stay may be granted, however, to avoid duplicative proceedings or a decision in one proceeding that will have

preclusive effect on the other. <u>BMC Contractors</u>, 2007 WL 128813, at *3. In addition, a stay may be desirable where completion of the arbitration may resolve, "or at least shed some light on," the arbitrable issues and claims remaining before the court. <u>Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.</u>, 474 F.3d 966, 972 (7th Cir. 2007).

There is no risk here of duplicative proceedings as to Debtor's claims. In fact, the arbitrable state law damage claims are largely dependent on what this Court decides as to the validity of Citifinancial's lien. Since that issue that will not be arbitrated in any event and is the threshold issue for resolution, it would serve no purpose to stay the proceedings here. CitiFinancial's motion to stay Debtor's two nonarbitrable causes of action will be denied.

## O R D E R

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that CitiFinancial's motion to compel arbitration of Debtor's causes of actions: intentionally misrepresenting to Debtor that it had a security interest; forcing Debtor into bankruptcy; defamation; and infliction of emotional distress, is GRANTED. The motion to compel arbitration of Debtor's two causes of action concerning the validity of CitiFinancial's lien is DENIED.

IT IS FURTHER ORDERED that CitiFinancial's motion to stay this

adversary proceeding pending the completion of the arbitration process is GRANTED as to Debtor's claims: intentionally misrepresenting to Debtor that it had a security interest; forcing Debtor into bankruptcy; defamation; and infliction of emotional distress. The motion to stay is DENIED as to Debtor's two causes of action concerning the validity of CitiFinancial's lien.

A separate scheduling order regarding those issues will be entered and a final pretrial conference will be scheduled during the January 2008 term of court.

Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 6 day of November, 2007.